**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | |
|---|---|
| LEONARDO HECTOR ROSADO, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | 1:10CR11-1 |
| ) | 1:13CV139 |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

**MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

This case comes before the undersigned United States Magistrate Judge for a recommended ruling on Petitioner's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Docket Entry 52) ("Section 2255 Motion").[1] For the reasons that follow, the Court should deny the instant Section 2255 Motion.

INTRODUCTION

This Court (per now-Chief United States District Judge William L. Osteen, Jr.) previously entered its Judgment against Petitioner imposing, inter alia, a 121-month prison term, upon a jury's finding of guilt on an Indictment charging him with possessing with intent to distribute 1,982.4 grams of cocaine hydrochloride in violation of 21 U.S.C. § 841(a)(1) & (b)(1)(B). (Docket Entry 38; see also Docket Entry 1 (Indictment); Docket Entry 29 (Verdict Form); Docket Entries 44-47 (Trial Tr.); Docket Entries 43, 48

---

[1] Parenthetical citations refer to Petitioner's criminal case.

(Sent'g Hrg. Tr.).) The United States Court of Appeals for the Fourth Circuit affirmed. United States v. Rosado, 452 F. App'x 255 (4th Cir. 2011). Petitioner then timely filed the instant Section 2255 Motion. (Docket Entry 52.) The United States responded (Docket Entry 57) and, despite notice of his right to reply (Docket Entry 58) and an extension of time to do so (Text Order dated Aug. 19, 2013), Petitioner filed none (see Docket Entries dated July 26, 2013, to present).

## DISCUSSION

Petitioner's Section 2255 Motion asserts two grounds for relief: 1) "Ineffective Assistance of Counsel" (Docket Entry 52, ¶ 12(Ground One)); and 2) "Procedural Due Process Violation" (id., ¶ 12(Ground Two)).[2] These claims provide no basis for relief.

As to Ground One, the instant Section 2255 Motion states that Petitioner's "attorney rendered constitutionally ineffective assistance of counsel during the pre-trial phase and his deficient efforts to properly advise Petitioner [] during the pre-trial, plea negotiation phase of his case constituted demonstrable prejudicial error." (Id., ¶ 12(Ground One)(a).) More specifically, Petitioner has alleged (in unsworn fashion) as follows:

---

[2] The instant Section 2255 Motion consists of six standard form pages (pin-cited herein by paragraph number), 15 independently-numbered, continuation pages (pin-cited herein by page number), a single-page certificate of service, a two-page affidavit by Petitioner (pin-cited herein by paragraph number), and six pages of materials regarding disposition of his direct appeal.

2

> [Petitioner] was misinformed by trial counsel on his sentencing exposure and never advised on the benefits of pleading guilty and receiving a three level reduction for acceptance of responsibility. . . . Trial Counsel [] misinformed Petitioner [] during the pre-trial phase that "he would receive a 78-month sentence if he lost trial." . . . Trial Counsel never advised Petitioner to plead guilty or the benefits of pleading guilty in a timely fashion because he was under the erroneous belief that Petitioner [] would receive a 78-month sentence no matter what happened in the case and that there was no incentive to plead guilty.

(Id., continuation pp. 10-12; see also id., continuation p. 15 (bearing apparent signature of Petitioner, but without certification of oath or perjury acknowledgment).) According to Petitioner's unsworn contentions, "[i]f [he] had been properly advised about his sentence exposure and the option of an 'open' guilty plea with its accompanying three-level reduction, his sentencing possibilities would have been dramatically less. . . . Petitioner should be given the opportunity to tender a guilty plea." (Id., continuation pp. 12-13.)

By affidavit, Petitioner has sworn "[t]hat [counsel] informed [Petitioner] during the pre-trial phase that [Petitioner] would receive a 78-month sentence, no matter what happened in [Petitioner's] case . . . [and] guaranteed that [Petitioner] would get a 78-month sentence." (Id., aff. ¶¶ 2-3 (emphasis added).)[3]

---

[3] Notably, Petitioner's own record statements contradict his current claims about the advice he received from his counsel. For example, at his sentencing hearing, Petitioner admitted that (prior to trial) counsel repeatedly told Petitioner that he faced
(continued...)

3

Petitioner further has averred that he "would have elected to take an 'open' plea, accept responsibility, and not go to trial if [he] would have been properly advised on [his] sentence exposure and possibly receiving a three-level reduction for acceptance of responsibility." (Id., aff. ¶ 5.)

For his part, Petitioner's counsel has sworn by affidavit as follows:

1) during a meeting with Petitioner, "prior to his arraignment and detention hearing[,] [counsel] explained the statutory penalties applicable in [Petitioner's] case, including the imprisonment range of five to 40 years under 21 U.S.C. § 841(b)(1)(B)" (Docket Entry 57-1, ¶ 3.b.);

2) during a subsequent (second) pre-trial meeting with Petitioner, counsel "again explained the statutory penalties applicable in [Petitioner's] case . . . [and] explained the sentencing guidelines, including . . . the possibility of a three-level reduction for acceptance of responsibility" (id., ¶ 3.c.);

---

[3](...continued)
imprisonment for five to 40 years (although Petitioner asserted in conclusory fashion that he "didn't understand what that meant"). (See Docket Entry 48 at 16.) Further, in his pre-sentence allocution, Petitioner did not allege that his counsel ever said Petitioner would receive the same exact prison sentence (i.e., 78 months) regardless of what happened (e.g., whether he pleaded guilty or a jury found him guilty at trial), but rather only that his counsel (mis)forecast a sentencing range of 63 to 78 months if Petitioner lost at trial. (See id.; see also id. at 17 ("[Counsel] told me that no matter what happened, the maximum I could get in my case was 78 months." (emphasis added)).)

3) at that second meeting, Petitioner "told [counsel] that he was not guilty of the crime charged, and that he had no interest in pleading guilty" (id.);

4) during a later (third) pre-trial meeting with Petitioner, counsel "repeated the same advice as [the] previous meeting[s] regarding the applicable statutory penalties, and the sentencing guidelines" (id., ¶ 3.d.);

5) at that third meeting, despite counsel advising Petitioner that "it would be difficult to prevail at trial," Petitioner "again told [counsel] that [Petitioner] wanted to contest the charge at trial" (id.);

6) during another (fourth) pre-trial meeting between Petitioner and his counsel, Petitioner "confirmed that he wanted to go forward with the trial, and that he wanted to testify in his own defense" (id., ¶ 3.e.); and

7) counsel "did not tell [Petitioner] 'that he would receive a 78-month sentence, no matter what happened in his case,' nor did [counsel] 'guarantee' that [Petitioner] would receive such a sentence" (id., ¶ 3.h.).

At the time of Petitioner's trial in 2010, his counsel had served as an Assistant Federal Public Defender in this district for more than 15 years. See, e.g., United States v. Cash, No. 93-5896, 28 F.3d 1211 (table), 1994 WL 326024 (4th Cir. July 8, 1994) (unpublished) (identifying Petitioner's counsel as "Assistant

5

Federal Public Defender, Greensboro, NC").[4] During that span, Petitioner's counsel necessarily dealt on a routine basis with the many vagaries of federal sentencing in general, see, e.g., United States v. Carr, 303 F.3d 539 (4th Cir. 2002) (remanding case based on intricate Sentencing Guidelines argument by Petitioner's counsel); United States v. Brandon, 247 F.3d 186 (4th Cir. 2001) (resolving in the defendant's favor complex statutory sentencing issue raised by Petitioner's counsel), and the phenomena of downward adjustments for acceptance of responsibility under U.S.S.G. § 3E1.1 in particular, see, e.g., United States v. Brack, 22 F. App'x 337 (4th Cir. 2002) (addressing appeal brought by Petitioner's counsel regarding Section 3E1.1); United States v. Goldston, Nos. 94-5122, 5123, and 5129, 41 F.3d 1504 (table), 1994 WL 649082 (4th Cir. Nov. 18, 1994) (unpublished) (same). Moreover, for the last 17 years, the undersigned Magistrate Judge has observed (on a regular basis) Petitioner's counsel representing federal criminal defendants in this Court and uniformly has found him extremely knowledgeable about federal criminal law and practice (including the operation of the Sentencing Guidelines and 18 U.S.C. § 3553(a)), as well as highly committed to his clients' interests.

---

[4] Petitioner's counsel since has earned a promotion to the position of First Assistant Public Defender for the district. See, e.g., United States v. Pollard, 595 F. App'x 255 (4th Cir. 2015) (identifying Petitioner's counsel as "First Assistant Federal Public Defender, Greensboro, North Carolina").

Under these circumstances, the undersigned Magistrate Judge deems "fanciful," "fantastic," and "wholly incredible," Denton v. Hernnadez, 504 U.S. 25, 33 (1992) (internal quotation marks omitted), and therefore "factually frivolous," id., Petitioner's above-quoted allegation(s) (sworn and/or unsworn) that his counsel "guaranteed" Petitioner that he would receive a 78-month sentence "no matter what happened" and did not advise Petitioner about downward adjustments under Section 3E1.1. "A § 2255 motion which is facially inadequate may be summarily denied, i.e., motions stating . . . contentions which are wholly incredible . . . ." United States v. Butt, 731 F.2d 75, 77 (1st Cir. 1984) (internal quotation marks omitted); see also Oliver v. United States, 961 F.2d 1339, 1343 n.5 (7th Cir. 1992) ("No hearing is required in a section 2255 proceeding . . . if the allegations in the motion are . . . incredible . . . ."); Holland v. United States, 406 F.2d 213, 216 (5th Cir. 1969) ("Nor is a hearing [on a motion brought under Section 2255] required for an account which is unbelievably fanciful . . . ."); Almonte v. United States, No. 91Civ.6044(PNL), 1992 WL 84942, at *1 (S.D.N.Y. Apr. 10, 1992) (unpublished) (dismissing as "frivolous" claims brought under Section 2255 based on "wholly fanciful" contentions). Consistent with that authority, this Court should summarily deny Ground One based on the frivolous nature of the factual allegations on which it depends.

Alternatively, even if the Court chose to credit (for present purposes) Petitioner's statement(s) that counsel "guaranteed" Petitioner he would receive a 78-month prison sentence "no matter what happened" and that counsel did not advise Petitioner about acceptance of responsibility reductions under Section 3E1.1, the record still forecloses relief on Ground One, because Petitioner cannot establish prejudice as required for an ineffective assistance of counsel claim by Strickland v. Washington, 466 U.S. 668, 687–94 (1984). In particular, Petitioner cannot show that a different result would have occurred (i.e., that he would have pleaded guilty and received a lesser sentence) if he had received proper advice that: 1) pursuant to 21 U.S.C. § 841(b)(1)(b), whether he pleaded guilty or a jury found him guilty, he faced imprisonment for up to 40 years (as well as a minimum of five years in prison, absent a substantial assistance motion by the United States under 18 U.S.C. § 3553(e) or his satisfaction of the "safety-valve" conditions set by 18 U.S.C. § 3553(f)); and 2) in deciding what sentence to impose, the Court would have to consider the factors set out in 18 U.S.C. § 3553(a), including the advisory Sentencing Guidelines range (which would reflect the presence or absence of a downward adjustment under Section 3E1.1).

In that regard, during Petitioner's sentencing hearing allocution, he emphasized that, "[f]rom the first moment, [he] ha[s] said that [he is] not guilty of the things that [the United

8

States] ha[s] accused [him] of doing." (Docket Entry 48 at 15 (emphasis added); see also id. at 15-16 (complaining that "the Government presented witnesses who were confusing . . . and the Government destroyed [Petitioner's] evidence" and "saying that [he is] not in agreement with the way the Government presented the evidence").) Moreover, when (during his allocution) Petitioner began referencing his alleged pre-trial, (mis)understanding of his potential sentence, the Court (per now-Chief Judge Osteen) asked: "[Y]ou were not going to accept [a guilty plea] because you were not guilty? Did I understand that correctly?" (Id. at 17.) Petitioner replied: "Yes, sir." (Id.) To further clarify matters, the Court inquired: "[A]re you saying that you went to trial because you were not guilty? Is that why you elected to go to trial?" (Id.) Again, Petitioner answered: "Yes, sir." (Id.)

The record thus establishes that Petitioner chose to go to trial not because of any errant advice about his sentencing prospects, but rather because he wanted to pursue an acquittal. Indeed, at sentencing, Petitioner had to concede that, given his consistent protestations of innocence (even at that moment), it was "logical" to conclude that, for purposes of his decision-making process, "it didn't really matter what kind of time [he] faced . . . ." (Id.) Nonetheless, in his allocution, Petitioner tried to suggest that, despite "know[ing] that [he is] not guilty because [he is] not guilty, if [his counsel] had told [him] [he] was facing

9

. . . more than 10 years [if found guilty at trial], then [he] would have told [his counsel], yes, [he will] take those 78 months even though [he is] not guilty." (Id. (emphasis added); see also id. at 17-18 ("I repeat that even though I know I'm not guilty, I would have accepted those 78 months against my will.").) Petitioner's instant Section 2255 Motion contends that his foregoing "statement at sentencing clearly indicates that if not for counsel's errors, a reasonable probability exists that the outcome of the plea process would have been different with competent advice." (Docket Entry 52, continuation p. 10.) Specifically, Petitioner has suggested he would have pleaded guilty and would have received less prison time, "[i]f [he] had been properly advised about his sentence exposure and the option of an 'open' guilty plea with its accompanying three-level reduction . . . ." (Id., continuation p. 12; see also id., aff. ¶ 5 (averring that he "would have elected to take an 'open' plea, accept responsibility, and not go to trial if [he] would have been properly advised on [his] sentence exposure and possibly receiving a three-level reduction for acceptance of responsibility").) That argument falls short for at least three reasons.

First, as the Court (per now-Chief Judge Osteen) pointed out at sentencing, no basis exists to conclude Petitioner's counsel "could have in good conscience recommended that [Petitioner] accept a plea if, in fact, [Petitioner] w[as] contending that [he] w[as]

10

innocent." (Docket Entry 48 at 19.)  Second, Petitioner has not shown that the United States ever offered him a plea agreement that would have ensured him a prison sentence of no more than 78 months (i.e., the arrangement that Petitioner said would have induced him to plead guilty "against [his] will").  (See Docket Entry 52, ¶ 12(Ground One)(a); id., continuation pp. 1-13; id., aff. ¶¶ 1-5.)  Third, if Petitioner pleaded guilty without a plea agreement (presumably what the instant Section 2255 Motion refers to as "tak[ing] an 'open' plea"), he would have faced a sentencing range of five to 40 years in prison, see 21 U.S.C. § 841(b)(1)(B), and (as concerns the calculation of his advisory Sentencing Guidelines range) would not have possessed any right even to a two-point reduction for acceptance of responsibility under Section 3E1.1(a), see U.S.S.G. § 3E1.1, cmt. n.3 ("A defendant who enters a guilty plea is not entitled to an adjustment under this section as a matter of right."), let alone a third-point reduction under Section 3E1.1(b), see U.S.S.G. § 3E1.1, cmt. n.6 ("Because the Government is in the best position to determine whether the defendant has assisted authorities in a manner that avoids preparing for trial, an adjustment under subsection (b) may only be granted upon a formal motion by the Government at the time of sentencing.").

Simply put, Ground One lacks merit.

In connection with Ground Two, the instant Section 2255 Motion alleges that the Court deprived Petitioner of due process by

11

improperly adopting an upward adjustment under U.S.S.G. § 3C1.1 for obstruction of justice based on his commission of perjury at trial. (See Docket Entry 52, ¶ 12(Ground Two)(a); see also id., continuation pp. 13-15.) Petitioner unsuccessfully challenged that adjustment on direct appeal. See Rosado, 452 F. App'x at 256-57. He cannot re-litigate that matter via the instant Section 2255 Motion. See United States v. Dyess, 730 F.3d 354, 360 (4th Cir. 2013) (citing United States v. Linder, 552 F.3d 391, 396 (4th Cir. 2009), United States v. Roane, 378 F.3d 382, 396 n.7 (4th Cir. 2004), and Boeckenhaupt v. United States, 537 F.2d 1182, 1183 (4th Cir. 1976)). Moreover, alleging an error in the application of the Sentencing Guidelines states neither a federal constitutional claim, see United States v. Saferstein, 673 F.3d 237, 243 n.3 (3d Cir. 2012); Grant v. United States, 72 F.3d 503, 506 (6th Cir. 1996); Banks v. United States, No. 5:08CV162, 5:05CR30, 2010 WL 3855065, at *12 (N.D.W. Va. July 21, 2010) (unpublished), recommendation adopted, 2010 WL 3854426 (N.D.W. Va. Sept. 29, 2010) (unpublished), appeal dismissed, 439 F. App'x 234 (4th Cir. 2011), nor an otherwise cognizable claim under Section 2255, see United States v. Foote, ___ F.3d ___, ___, 2015 WL 1883538, at *8 (4th Cir. 2015) (citing United States v. Mikalajunas, 186 F.3d 490, 495 (4th Cir. 1999)). Ground Two thus fails as a matter of law.

CONCLUSION

Petitioner's claims do not warrant collateral relief.

**IT IS THEREFORE RECOMMENDED** that Petitioner's Motion to Vacate, Set Aside, or Correct Sentence (Docket Entry 52) be denied without issuance of a certificate of appealability.

                                               /s/ L. Patrick Auld
                                                 **L. Patrick Auld**
                                    **United States Magistrate Judge**
June 2, 2015

13

Case 1:10-cr-00011-WO   Document 63   Filed 06/02/15   Page 13 of 13